**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

Sinaloa Hobson                                    *
6232 Gothic Lane
Bowie, Maryland 20720

     *Plaintiff*                              *

Versus                                                      Case No.: 1:22-cv-01729
                                                                 *

RATP DEV USA
3800 Sandshell Drive, Suite 180
Forth Worth, Texas 76137

And                                                  *

D.C. Streetcar
2550 Benning Road, NE
Washington, D.C. 20002                  *

     *Defendants*

                                                                 *

                                                                 *

**************************************************************************

## <u>COMPLAINT</u>

Plaintiff Sinaloa Hobson, by and through her undersigned counsel Governor E. Jackson, III of the Law Office of Governor Jackson, III LLC hereby files this Complaint and sues Defendants RATP-DEV USA and DC Streetcar and states that Plaintiff brings forth this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. In furtherance of this action, Plaintiff states as follows:

1

## PARTIES

1. Plaintiff Sinaloa Hobson, at all times relevant, resided at 6232 Gothic Lane, Bowie, Maryland 20720. Plaintiff Hobson is an African-American female and began working for the Defendant in April 2020.

2. Defendant RATP Dev USA, which has its offices in Fort Worth, Texas, is a wholly owned subsidiary of RATP Group. RATP Dev USA has approximately 46 years of expertise in managing and operating high-quality, safe, responsive and efficient transit systems throughout the United States. As part of a broader global organization, RATP Dev USA marshals the resources, talent and innovative spirit from its global operating agencies. Founded in Paris nearly 120 years ago, RATP Group's first Metro line crossed the French Capital and opened for the Paris World Fair on July 19, 1900 after eighteen months of construction. Currently, RATP Group is one of the world's largest providers of transit. RATP Dev USA, a wholly owned subsidiary of RATP Group, offers services to urban networks in 12 countries, including North America. At all times relevant, RATP Dev USA collaborated with and provided economic and personnel resources to co-Defendant DC Streetcar for the purposes of funding, financing, and otherwise operating DC Streetcar in the District of Columbia. At all times relevant, RATP Dev USA delegated the promulgation and enforcement of standard operating procedures, employee responsibilities (including supervisor responsibilities), employee training, employee management, and employee oversight solely to the agents, servants, and employees of co-Defendant DC Streetcar. Such delegation occurred by RATP Dev USA issuing written standard operating procedures to the agent, servants, and employees of co-Defendant DC Streetcar, and allowing DC Streetcar's managers and supervisors the discretion regarding

2

personnel decisions made with respect to training, staffing, management, compliance and oversight.

3. Defendant DC Streetcar is a subsidiary of RATP Dev USA and has its offices at the Car Barn Training Center located 2550 Benning Road, NE Washington, D.C. 20002 where the Plaintiff performed all of her duties within the scope of her employment and where the Plaintiff was subject to the Title VII violations alleged in this Complaint. This private Defendant works with the District Department of Transportation to provide streetcar transit ridership alternatives to residents and patrons of the District of Columbia.

## JURISDICTION & VENUE

4. With respect to the federal claims asserted herein, the Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (4) for the violation of plaintiff's federal statutory rights. Venue is proper in this District pursuant to 28 U.S.C. §1391 (b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the District of Colombia.

5. Plaintiff filed the instant Complaint within 90 days of receipt of Notice of Right to Sue letters from the United States Equal Employment Opportunity Commission ('EEOC"), specifically EEOC Charge Nos. 531-2021-02421 and 570-2022-01797.

 6. At all times relevant Defendants have been doing business in the District of Columbia and have employed more than fifteen (15) employees.

7. At all relevant times Defendants have continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §2000e-(b), (g) and (h).

## FACTS COMMON TO ALL COUNTS

8.      Plaintiff incorporates by reference paragraphs 1-7 as though fully set forth herein.

9.      On April 15, 2020, Plaintiff Hobson was extended a written offer of employment for the position of Maintenance Supervisor with a scheduled start date of monday, April 27, 2020, contingent upon her completion of a drug and background check. The scope of her job description and terms and conditions of employment, including her pay and eligibility for benefits, was outlined in her offer letter as follows:

"Services: Your employment shall commence on Monday April 27, 2020. Your main goal shall be to supervise Maintenance Department personnel (Shop Technicians, Utilities, and Parts Department) and their associated duties and responsibilities. To include supervising the overall inspections/maintenance of the streetcar as detailed in the attached Job Description.

You shall work five (5) days per week. your schedule will include weekends and nights and is subject to change depending on Company activities. you shall be entitled to 10 vacation days per year. You also shall be entitled to 10 sick days and 11 paid holidays as set forth in the Employee Handbook."
                    *****************************************
"Benefits: As an employee of the Company, you are eligible to participate in the Company's benefit plan. Subject to applicable law, any contributions to the benefit plan are made in the Company's sole and absolute discretion and may be changed or discontinued at any time."
                    *****************************************
"Compensation: The Company shall pay you, in accordance with the Company's compensation payment policies: (i) an annual base salary of $81,000 in bi-weekly installments to be paid by the Company to the Employee. The base salary shall be referred [to (sic)] as the Compensation."
                    *****************************************
"General Description: The Maintenance Supervisor independently supervises maintenance Department personnel (Shop Technicians) and their associated duties and responsibilities. Includes supervising the overall inspections/maintenance of the streetcar. The Maintenance Supervisor assures that the maintenance activities are carried out safely, effectively and efficiently in order to consistently provide timely, safe, and cost-effective transportation to the public. This position performs related work as required. The Maintenance Supervisor reports directly to the Maintenance Director."

At the time of Plaintiff's hire on May 5, 2020, the Maintenance Director was Sean Revel (male), and Plaintiff's comparator (i.e. similarly situated Maintenance Supervisor) was Anthony

Peregrina. Together, Plaintiff and Mr. Peregrina were responsible for the supervision of nine

(9)male shop technicians. The General Manger to whom Mr. Revel reported during Plaintiff's

tenure was also a male.

10.     Although Plaintiff Hobson never underwent any orientation period nor received

any formal training for her position, Plaintiff's tenure of employment was satisfactory for the

balance of 2020 as she was never counseled, disciplined, or reprimanded for failing to perform

any of her assigned duties. However, on February 4, 2021, Plaintiff received an unsolicited

document from Mr. Revel entitled "Maintenance Supervisor Expectations" with specific

directives addressing expected conduct of Plaintiff Hobson (referred to as "Sin" in the

document), and stating in relevant italicized part as follows (emphasis added):

> "I feel that when we implement this, it should have a lasting effect on our
> department long after you or I are gone. I want to ensure our success and the
> success of our staff. So there is work to be done and all of us in this department
> are more than capable as well as accountable. As discussed we will meet every
> other week to discuss, update and vent if necessary. We will meet Kyaira once a
> month. I encourage you guys to meet with your staff at least once a month, letting
> them know we hear their voices and got their backs. We can also express our
> concerns simultaneously or before/after. Just like we need told [sic] hold [sic] our
> techs/SA accountable, I have to hold you guys accountable, as Marwan
> (corporate) holds me accountable. I will print and sign both copies. Please sign
> and date and scan back to me please. The topic summaries are highlighted below.
>
> Training- Our techs should be confident in there [sic] day to day to interactions
> with the cars and info-structure. Anthony, we agreed that you'd schedule time to
> train and document the techs new and vetted, the proper way to QA in your
> absence. Also, we are all aware that our techs aren't getting formal training, so to
> keep our team solid Anthony will also get a training schedule for the following.
> Sin, I expect you be in these trainings to better help your confidence in supporting
> your techs. Also SIn you're expected to follow up with these trainings as
> discussed on Wednesday. The purpose of you following up is merely to show our
> techs some uniformity and togetherness from the maintenance management staff.
> It also, gives you a better idea where people are at skill wise and what help or
> more training they'll need.
> ************************************************

Inspections- Inspection efficiency and thoroughness is of the utmost importance due to customer and operator safety as well as a pleasant riding experience. We have to ensure that our inspections are done on time. Sin this tasks fall on your shoulders considering the shift that does most inspections. Inspections should be complete, not falsified and QA'd by a tech, sup, or myself before being deemed complete. To many documents and or inspections are being populated without any follow up or quality assurance. When techs know we're not checking they'll cut corners. We cannot cut corners inspecting the cars when we have the safety of the public, techs, operators to be responsible for. We are no longer going to wait for things to happen, we're going to be proactive instead of reactive. No more falsifying documents. If it happens and I catch it, discipline will be sent down. It is very serious. Please let our staff know the severity of lying on inspections.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

"OH- We briefly discussed OH. Anthony, Knorr is your baby to organize with Leslie and the car parts. You've done an amazing job thus far, thank you very much. I'll continue with UTC and the trucks. Sin, as discussed, you'll be making sure that we have stayed on top of shipments going and coming. As well as letting the guys know not to touch the packages until we have gotten packing slips and have verified that the shipment was inventoried before grabbing to use."

11.     On March 26, 2021, less than two months after the issuance of the

aforementioned letter and without any interaction with Mr. Revel for purposes of constructive

criticism since the issuance of the aforementioned letter, Plaintiff Hobson received the following

letter from Mr. Revel:

"Dear Sinaloa, This letter is regarding your performance as a Maintenance Supervisor.

In my observations and assessments, the last 2-6 months your and I have had several discussions concerning your ability to get tasked [sic] done such as station stop signs, overtime, Personnel directives, meeting attendance, etc. On January 29th, 2021-- we've had a detailed discussion concerning the supervisor expectation document, which you signed on February 4, 2021. When we discussed the concerns, you were aware that you needed to improve on training, 4 cars and spare, supervising techs, cell phone accountability, email confirmation, vendor updates, disciplinary actions for staff. Yet, no significant improvements have been done. Your inability to lead and provide direction has been an ongoing concern. On a number of different occasions, I've made specific requests of you. I asked that you to coach certain staff, give tasks to staff, and set them up to achieve their goals safely and efficiently. Most tasks have not been done or very inconsistent.

We have also had many conversations about accountability and supervision. We have discussed many examples of how the total results are not meeting my expectation or company standards. Specifically, referring to directives not being attempted or met. It is very concerning that you have not lived up to those standards.

Based on this feedback and your performance over the past few months, you are not meeting expectations for a Maintenance Supervisor.If you continue to fall below performance standards, further disciplinary action will be taken up to and including termination.

I am going to schedule a bi-weekly meeting for every Monday to review your performance. We will develop an action plan within 7 days on how you are to meet job standards/requests. We will meet again one week from today to cover your action plan and make adjustments to it, if necessary.

If you have any questions or concerns about what we have discussed today, please do not hesitate to let me know. Sean Revel, Director of Maintenance"

At the time that Plaintiff was provided with this correspondence from Mr. Revel, she was also instructed by Mr. Revel to complete her own Individual Development Plan "by April 2 to be turned into corporate." Plaintiff complied by candidly completing the Individual Development Plan and personally submitting it to Mr. Revel on April 2. From April 2 until April 15, Plaintiff did not receive any response, feedback, or request to meet from Mr. Revel.

12.     On April 15, Plaintiff authored a letter addressed to Karyn Bess in the Human Resources Department for Defendant RATP Dev. Plaintiff Hobson wrote:

"Sean is overly critical, he badgers me, he bully's [sic] me, he is controlling, intrusive and petty. He never provides positive feedback. He fails to support me in accomplishing my job. He never recognizes my good performance. I serve a Director who helps my self confidence and self esteem grow. Someone who helps me advance my career. I deserve a professional treatment at work. Sean chooses favorites and makes excuses for the poor work performance of his favorites. He pals around with them outside of work but instructed me in writing not to eat lunch with the technicians or ride in the Service vehicle. SEan fails to communicate details. He changes his mind frequently which leaves me off balance. He has changed my start time three times which involves me rearranging my life. From my start date I was hired as the midnight supervisor. He never started me on midnight, he had me come in at 1 pm for almost a year. Recently he put me on 4 p.m. till 12:30. Now he wants me to re-assign my life to midnight

after working for a year on second shift. He does not give clear detailed instructions. Sean uses disciplinary measures inappropriately when simple positive communication would correct the problem. He instructed me to write up the technicians for any and everything. Sean will not let go of past mistakes. Continually searches for faults in me. Sean can't deal with disagreement from me cause I have my own opinions about work related issues. He discussed my short comings in front of another supervisor (Anthony) laughed and slapped five with Anthony which made me feel like I was not one of the boy's. His constant lack of clarity around projects was the cost of me receiving a negative write up.

I was asked to write a self evaluation which I did and to this day April 15th, 2021 he has made no attempt to go over it with me. I intend to send you a copy of the self evaluation which mentioned some things I am discussing with you today. Again, Sean gives me directives that do not include details which makes it hard for me to complete the job to his satisfactory or purpose to somehow make me beg him for professionalism. From my first day on the job to this day, Sean has giving me NO formal training to prepare me for the job. He has not been very supportive, yet he flaunts his relationship at work with a female co-worker (kyaira) as if I'm next so I'd better conform to what he says in order to keep my job.

On Tuesday April 13th, 2021 Sean belittled me in front of (Anthony) the night shift supervisor. I arrived at work at 4 pm and was asked to attend a meeting Sean, Anthony and myself. By 4:30 p.m. Sean sent me back home because I was trying to defend myself against one of his attacks and because I disagreed with him as far as what helps me to learn. I will not allow him to belittle me as he has my co-worker (Kyiara) which does him sexual favors. This caused me to miss a day of work and use my sick time because of stress and anxiety. I myself and others have witnessed Sean and Kyiara demonstrate inappropriate behavior which made me uncomfortable. I witnessed them arguing in a angry way out loud in front of witnesses. One day Sean put his hands on Kyiara to restrain her because she threw alcohol in his face. "She was not sent home". My Director's actions are beginning to make it hard for me to work. Sean's sexuality is at work and his mind is not. Supervisor's sleeping with co-workers and Sean is not the only one. Employees in the training department passing out on the floor and protocol not being carried out by either offering the employee medical help or calling for a urine test. Things are out of hand and a internal investigation needs to be carried out.

I was observing tow employees while they worked. This is something I do to help me learn how the repairs are made. We don't have written procedures in place so that is how I learn. Sean approached me and communicated to me that he did not want me babysitting the employees. I was not babysitting I was trying to learn. He also communicated in writing that we should not ride with the technicians in the Service vehicles which means I'm in the blind not knowing if they are performing their job or just slacking off. Sean expressed that we should not eat lunch with the

8

technicians. Sean's short sightedness and controlling ways is making it hard for me to be a hands on supervisor. He is tying my hands every step of the way making it hard for me to do my job. I can't please him. I received a bad critique which interferes with my career progress. He is holding on to mistakes that were made in the beginning when I began as a supervisor and again he did not train me on the do's and don'ts. I pretty much learned on the fly.

How I know I work in a toxic environment: I began to bring the problems with Sean home and discuss it with my loved ones. I'm losing sleep, its causing me stress and anxiety. Sean requires us to answer the phone and be at his beckoning call twenty four hours seven days a week. There is no down time from him. Requires us to answer emails possibly on our off day. Attend meetings on our off days. I'm working under the expectation that I'm always available. I have a question: Under my contract I signed am I required to work over 40 hours a week? If you could please supply me with a copy of the contract I signed.

I have been following all of his request of me and it is still not enough. In the beginning Sean discussed (Anthony's) short comings with me. Now he is discussing my short coming's with Anthony. Again I deserve professionalism.

I would like to include the copy of the self evaluation and the copy of the negative critique however they are both at the job and I'm off work do to stress and anxiety. As soon as I return I will supply you with a copy of both. Your attention to this complaint is very much needed.

Thanks, Sinaloa Hobson Maintenance Supervisor"

13.     On April 28, Plaintiff Hobson, without having received any response to her letter

sent an e-mail to Ms. Bess stating:

Good Morning; Will you be taking the lead on my complaint? I was told that we have a new Washington DC HR person and I didn't know if you would pass it on to her. I'd like it to remain a corporate matter if I have a choice. Look forward to your response.

Sinaloa Hobson Maintenance Supervisor

Ms. Bess replied:

"Hi – yes I am still working on this one. I am traveling and on vacation next week.

With leadership being on vacation this week it has been challenging to meet with everyone but I am still working on concern brought in the letter you sent and will follow up with you when I return from vacation. Thank you for your patience."

14.     On April 30, Plaintiff received an e-mail from Mr. Revel which included a bulletin point list of "night supervisors duties and expectations" many of which varied in their nature and scope in comparison to the job description which Plaintiff was provided upon her hiring. Upon information and belief, Plaintiff 's comparator Mr. Anthony Peregrina did not receive any such list of "supervisor expectations". Upon her receipt, Plaintiff Hobson responded "Thanks. I read and understand what is expected."

15.     On May 3, not having received any response to her letter to Ms. Bess, Plaintiff Hobson e-mailed Ms. Bess inquiring, "I was wondering if you would update me on the progress of my case." On that same date, Plaintiff Hobson informed Mr. Revel that her aunt in North Carolina had passed and that she would provide details about the arrangements at a later date. Then, on May 4, Plaintiff Hobson received an e-mail from Mr. Revel stating as follows:

> "Morning Sinaloa, A few weeks back, we discussed a performance plan and in that performance plan we are to meet weekly or bi-weekly to evaluate performance.
> I'd like to start this evaluation on Monday mornings at 11 a.m. I will send a calendar invite that will be reoccurring. I will ask Ms. Webb to sit in on these evaluations. Best Regards, Sean Revel"

16.     On May 5, Plaintiff Hobson, feeling anxious about having to continue to work under and be supervised by the manager whom she complained about (and experiencing the stress associated with losing her loved one), followed up with Ms. Bess regarding the status of her "investigation." Plaintiff Hobson wrote:

> "Good morning: I really need you to step in regarding my complaint. Sean is making life for me here at DC Streetcar very difficult. Please find out why does he schedule me for meetings on my day off which is Monday. I have been assigned to the midnight shift and I need to rest on my day off. I deserve my two days off just like others here get there two days off."

17.     In response, Ms. Bess wrote:

"Hi Sin, as I stated to you on Friday I am on vacation this week and still reviewing

all concerns you brought forward. In the meantime you still you [sic] need to communicate with Sean directly about your days off or any other work concerns. If you want to have local HR--Angela, in the room for the discussion you can include her. I will circle back with you upon my return from vacation. Thank you.

Karyn"

18.     In the meantime, Plaintiff Hobson intermittently received emails from Mr. Revel commending her on her ability to meet his expectations when dealing with issues regarding the shop staff, giving Plaintiff Hobson the reasonable impression that she was performing her duties to the expectations of her direct supervisor and the Defendant D.C. Streetcar.

19.     On May 6, Plaintiff Hobson was advised that she was no longer allowed on the premises of the Respondent's property, and on May 7, 2020, Plaintiff Hobson was terminated from her position, receiving a letter from Meredith Green, VP, Field Human Resource of the West Region, stating as follows:

"Over the past several months, you have received feedback, mentoring, and coaching concerning the need for you to improve your performance. On March 26, 2021, you received written notice that your performance was failing to meet expectations, and if not improved, further disciplinary action would take place, up to termination of employment.

Since that time, your performance has continued to fall below expectations of your Performance Improvement Plan. As a result, your employment will be terminated effective May 7, 2021, and you will be paid up to that date."

Plaintiff's position was filled by a male, and Plaintiff's comparator, Anthony Peregrina, continues to be employed with D.C. Streetcar.

20.     As a result of the termination, Plaintiff Hobson sought mental health treatment based on the effects of the discriminatory and hostile treatment against her by Defendant's employee, Mr. Revel. Her treating mental health provider noted:

> "Pt reports that she got a new job working for DC street car. She reports that she
> was hired as a supervisor and without enough training and a complex work
> schedule. Pt reports that she recently got a review which she considered bad and
> unfair. She reports that she was depressed, anxious, very frustrated and felt that
> she was treated unfairly after her review."

Despite Plaintiff's best efforts to seek alternative similar gainful employment, she was unable to secure such desired employment until December 2021.

**COUNT I**
**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC §2000e. et seq.**

21. Plaintiff Hobson hereby adopts and incorporates paragraphs 1-20 as though fully stated herein.

22. The Defendants' conduct as alleged herein constitutes discrimination based on gender in violation of Title VII. Specifically, Plaintiff, a female, was a member of a protected class. On May 7, 2021, Plaintiff suffered an adverse employment action by being terminated as a Maintenance Supervisor and being removed from the seniority roster. This adverse employment action gives rise to an inference of discrimination based on the history of derogatory and discriminatory treatment experienced by Plaintiff Hobson at the hands of her male co-worker, Sean Revel. Defendants' agent, servant, and employee Sean Revel, within the scope of his employment, has treated her differently from and less preferably than similarly situated male employees, subjecting Plaintiff to discriminatory disciplinary measures, discriminatory denials of developmental opportunities, and discriminatory performance evaluations that affect promotions and Plaintiff's rate of pay in violation of Title VII.

23. Furthermore, Defendants, and the policies, practices, and/or procedures enacted and engaged in by its agents, servants, and employees, have resulted in disparate treatment affecting Plaintiff Hobson with respect to the terms and conditions of her employment. Defendants, by and

through its agents, servants, and employees, have perpetuated the disparate treatment affecting Plaintiff Hobson through conduct that has been intentional, deliberate, willful, malicious, reckless, and/or conducted in callous disregard of the rights of Plaintiff Hobson, entitling Plaintiff Hobson to punitive damages.  Specifically, Mr. Revel intentionally, and without any directive from any written policy, required Plaintiff to engage in self-evaluations which he never discussed with her to her detriment of not being able to acquire the skill set necessary to advance her career as an employee. Additionally, he also commanded the expectation of duties and responsibilities which were not disclosed in Plaintiff's job description, critiqued her for failing to meet these superfluous standards and expectations, and further did not require similarly situated males to meet any such expectations.

24. As a proximate cause and result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost wages, lost back pay and front pay, lost bonuses, lost benefits, loss of seniority status, and attorneys' fees and costs. Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from this Defendant under Title VII.

25. As a further result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer impairment to her name and reputation, humiliation, embarrassment, emotional and physical distress, and mental anguish. Damage to her reputation is particularly harmful given the limited number of professional opportunities unique to Plaintiff's skill set as a female railway engineer.

26. WHEREFORE, Plaintiff Hobson hereby claims against Defendant D.C. Streetcar and Defendant RATP-DEV-USA, jointly and severally, five hundred thousand dollars ($500,000.00) in compensatory damages, and one million dollars ($1,000,000) in punitive damages,

prejudgment interest, attorney's fees, costs related to the proceedings, back pay, front pay and any such other and further relief as justice may require including, but not limited to expungement of Plaintiff's personnel file, reinstatement of Plaintiff's seniority position, and placement within the organization in the same or substantially similar position within a department with a non-antagonistic environment.

<u>**COUNT II**</u>
<u>**HARASSMENT AND HOSTILE WORK ENVIRONMENT**</u>

27. Plaintiff Hobson hereby adopts and incorporates paragraphs 1-26 as though fully stated herein.

28. The Defendants' conduct as alleged herein constituted a hostile working environment in violation of Title VII as the harassing conduct was unwelcome, based on Plaintiff's gender, was sufficiently severe and pervasive to alter the conditions of Plaintiff Hobson's employment and create an abusive working environment, and was imputable to the Defendants and their agents, servants, and employees. Additionally, the Defendants, even after knowing of the harassment, failed to promptly correct the harassing behavior.

29. Based on the totality of the circumstances, Plaintiff Hobson's work environment was made hostile based on the frequency of Mr. Revel's conduct, its severity, offensiveness, and the manner in which it interfered with Plaintiff Hobson's work performance. Indeed, she explicitly detailed and articulated these bases in her letter to Human Resources when she wrote as follows:

> "Sean is overly critical, he badgers me, he bully's [sic] me, he is controlling, intrusive and petty. He never provides positive feedback. He fails to support me in accomplishing my job. He never recognizes my good performance. I serve a Director who helps my self confidence and self esteem grow. Someone who helps me advance my career. I deserve a professional treatment at work. Sean chooses favorites and makes excuses for the poor work performance of his favorites. He pals around with them outside of work but instructed me in writing not to eat lunch with the technicians or ride in the Service vehicle. SEan fails to communicate details. He changes his mind frequently which leaves me off

balance. He has changed my start time three times which involves me rearranging my life. From my start date I was hired as the midnight supervisor. He never started me on midnight, he had me come in at 1 pm for almost a year. Recently he put me on 4 p.m. till 12:30. Now he wants me to re-assign my life to midnight after working for a year on second shift. He does not give clear detailed instructions. Sean uses disciplinary measures inappropriately when simple positive communication would correct the problem. He instructed me to write up the technicians for any and everything. Sean will not let go of past mistakes. Continually searches for faults in me. Sean can't deal with disagreement from me cause I have my own opinions about work related issues. He discussed my short comings in front of another supervisor (Anthony) laughed and slapped five with Anthony which made me feel like I was not one of the boy's. His constant lack of clarity around projects was the cost of me receiving a negative write up.

I was asked to write a self evaluation which I did and to this day April 15th, 2021 he has made no attempt to go over it with me. I intend to send you a copy of the self evaluation which mentioned some things I am discussing with you today. Again, Sean gives me directives that do not include details which makes it hard for me to complete the job to his satisfactory or purpose to somehow make me beg him for professionalism. From my first day on the job to this day, Sean has giving me NO formal training to prepare me for the job. He has not been very supportive, yet he flaunts his relationship at work with a female co-worker (kyaira) as if I'm next so I'd better conform to what he says in order to keep my job.

On Tuesday April 13th, 2021 Sean belittled me in front of (Anthony) the night shift supervisor. I arrived at work at 4 pm and was asked to attend a meeting with Sean, Anthony and myself. By 4:30 p.m. Sean sent me back home because I was trying to defend myself against one of his attacks and because I disagreed with him as far as what helps me to learn. I will not allow him to belittle me as he has my co-worker (Kyiara) which does him sexual favors. This caused me to miss a day of work and use my sick time because of stress and anxiety. I myself and others have witnessed Sean and Kyiara demonstrate inappropriate behavior which made me uncomfortable. I witnessed them arguing in a angry way out loud in front of witnesses. One day Sean put his hands on Kyaira to restrain her because she threw alcohol in his face. "She was not sent home". My Director's actions are beginning to make it hard for me to work. Sean's sexuality is at work and his mind is not. Supervisor's sleeping with co-workers and Sean is not the only one. Employees in the training department passing out on the floor and protocol not being carried out by either offering the employee medical help or calling for a urine test. Things are out of hand and a internal investigation needs to be carried out.

I was observing tow employees while they worked. This is something I do to help me learn how the repairs are made. We don't have written procedures in place so that is how I learn. Sean approached me and communicated to me that he did not

want me babysitting the employees. I was not babysitting I was trying to learn. He also communicated in writing that we should not ride with the technicians in the Service vehicles which means I'm in the blind not knowing if they are performing their job or just slacking off. Sean expressed that we should not eat lunch with the technicians. Sean's short sightedness and controlling ways is making it hard for me to be a hands on supervisor. He is tying my hands every step of the way making it hard for me to do my job. I can't please him. I received a bad critique which interferes with my career progress. He is holding on to mistakes that were made in the beginning when I began as a supervisor and again he did not train me on the do's and don'ts. I pretty much learned on the fly.

How I know I work in a toxic environment: I began to bring the problems with Sean home and discuss it with my loved ones. I'm losing sleep, its causing me stress and anxiety. Sean requires us to answer the phone and be at his beckoning call twenty four hours seven days a week. There is no down time from him. Requires us to answer emails possibly on our off day. Attend meetings on our off days. I'm working under the expectation that I'm always available. I have a question: Under my contract I signed am I required to work over 40 hours a week? If you could please supply me with a copy of the contract I signed.

I have been following all of his request of me and it is still not enough. In the beginning Sean discussed (Anthony's) short comings with me. Now he is discussing my short coming's with Anthony. Again I deserve professionalism.

I would like to include the copy of the self evaluation and the copy of the negative critique however they are both at the job and I'm off work do to stress and anxiety. As soon as I return I will supply you with a copy of both. Your attention to this complaint is very much needed.

Thanks, Sinaloa Hobson Maintenance Supervisor"

30. As a direct result and proximate cause of the acts and omissions by Defendants' agents, servants, and employees, Plaintiff Hobson suffered emotional distress, mental anguish, embarrassment, stress, financial loss and other economic and non-economic injuries. Furthermore, the actions of the Defendants' agents, servants, and employees was conduct that was intentional, deliberate, willful, malicious, reckless, and/or conducted in callous disregard the rights of Plaintiff Hobson, entitling Plaintiff Hobson to punitive damages.

31. WHEREFORE, Plaintiff Hobson hereby claims against Defendant D.C. Streetcar and Defendant RATP-DEV-USA, jointly and severally, five hundred thousand dollars ($500,000.00)

in compensatory damages, and one million dollars ($1,000,000) in punitive damages, prejudgment interest, attorney's fees, costs related to the proceedings, back pay, front pay and any such other and further relief as justice may require including, but not limited to expungement of Plaintiff's personnel file, reinstatement of Plaintiff's seniority position, and placement within the organization in the same or substantially similar position within a department with a non-antagonistic environment.

<strong><u>COUNT III</u></strong><br><strong><u>RETALIATION</u></strong>

32. Plaintiff Hobson hereby adopts and incorporates paragraphs 1-31 as though fully stated herein.

33. The Defendants' conduct as alleged herein constituted retaliation in violation of Title VII as the Plaintiff engaged in statutorily protected activity, suffered an adverse employment action at the hands of her employer, and a causal link exists between the protected activity and the adverse action. Specifically, on April 15, 2021, Plaintiff Hobson engaged in the protected activity of making a complaint to human resources regarding what she believed was disparate and discriminatory treatment and a hostile work environment. On May 7, 2021, not even a month later, Plaintiff was terminated. The causal link between the protected activity and the adverse action is evident based on the timing of the adverse action in relation to the protected activity engaged in by the Plaintiff. For purposes of establishing a prima facie case of retaliation, temporal proximity can indeed support an inference of causation, but only where the two events are very close in time.

34. Defendants' supervisors, agents, servants, and employees have engaged in the course of conduct described in the allegations of this Count while acting in the course, scope and furtherance of their agency and employment relationship with the Defendants.

35. As a direct result and proximate cause of the acts and omissions by Defendants' agents, servants, and employees, Plaintiff Hobson suffered emotional distress, mental anguish, embarrassment, stress, financial loss and other economic and non-economic injuries. Furthermore, the actions of the Defendant's agents, servants, and employees was conduct that was intentional, deliberate, willful, malicious, reckless, and/or conducted in callous disregard of the rights of Plaintiff Hobson, entitling Plaintiff Hobson to punitive damages.

36. WHEREFORE, Plaintiff Hobson hereby claims against Defendant D.C. Streetcar and Defendant RATP-DEV-USA, jointly and severally, five hundred thousand dollars ($500,000.00) in compensatory damages, and one million dollars ($1,000,000) in punitive damages, prejudgment interest, attorney's fees, costs related to the proceedings, back pay, front pay and any such other and further relief as justice may require including, but not limited to expungement of Plaintiff's personnel file, reinstatement of Plaintiff's seniority position, and placement within the organization in the same or substantially similar position within a department with a non-antagonistic environment.

<u>Governor E. Jackson, III /s/</u>
Governor E. Jackson, III (Bar No. 1002797)
Law Office of Governor Jackson, III LLC
10 G Street NE, Suite 600
Washington, D.C. 20002
(410) 528-5150 (o)
(410) 528-1055 (f)
gjackson@governorjacksonlaw.com

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

Sinaloa Hobson                                    *
6232 Gothic Lane
Bowie, Maryland 20720

     *Plaintiff*                                    *

Versus                                    Case No.: 1:22-cv-01729
                                                  *
RATP DEV USA, et al.
3800 Sandshell Drive, Suite 180
Forth Worth, Texas 76137
**************************************************************************

<u>**PRAYER FOR JURY TRIAL**</u>

Plaintiff hereby requests that all matters set forth in the Complaint be tried by a jury.


<u>Governor E. Jackson, III /s/</u>
Governor E. Jackson, III (Bar No. 1002797)
Law Office of Governor Jackson, III LLC
10 G Street NE, Suite 600
Washington, D.C. 20002
(410) 528-5150 (o)
(410) 528-1055 (f)
gjackson@governorjacksonlaw.com

*Attorney for Plaintiff*

19