IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Sinaloa Hobson            *
6232 Gothic Lane
Bowie, Maryland 20720

     *Plaintiff*            *

Versus                             Case No.:1:22-cv-01729

                            *

RATP DEV USA
3800 Sandshell Drive, Suite 180
Forth Worth, Texas 76137

And                        *

D.C. Streetcar
2550 Benning Road, NE
Washington, D.C. 20002       *

     *Defendants*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### **OPPOSITION TO DEFENDANT RATP-DEV'S MOTION TO DISMISS**

Plaintiff Sinaloa Hobson, by and through her undersigned counsel Governor Jackson, III

of the Law Office of Governor Jackson, III, L.L.C., in accordance with the Local Rules, this

Court's Order, and in furtherance of her Opposition states as follows:

### *Statement of Facts*

### *Defendant RATP DEV USA's Receipt of Notice of Plaintiff's Claims*

After Plaintiff Hobson began working at Defendant DC Streetcar located at 2550

Benning Road, NE, Washington, D.C. 2002. This agency, at all times relevant, was owned by

Defendant RATP-DEV USA, whose offices are located in Forth Worth, Texas. *See* Complaint at

para. 2.

During the course of her employment, Plaintiff Hobson began experiencing harassment and discrimination based on her gender at the hands of her supervisor Sean Revel. *See* Complaint at paras. 10-12. Given that there was no human resource office or EEO officer located on-site at DC Streetcar, Plaintiff Hobson, on April 15, 2021, wrote to Karen Bess in RATP's HR department to express the degree to which she was subject to discrimination based on her gender and harassment based on the conduct of Mr. Revel. Defendant's Motion paraphrases Plaintiff Hobson's written complaint in a self-serving fashion, conspicuously omitting the explicit reference to Plaintiff Hobson's claims of gender discrimination, specifically, her feeling "like [she] was not one of the boy's [sic].". She also buttressed her claims of gender discrimination by comparing her treatment by Mr. Revel to his treatment of other males co-workers and female co-workers who performed sexual favors. Her complete written statements as pled in the Complaint reads follows:

> "Sean is overly critical, he badgers me, he bully's [sic] me, he is controlling, intrusive and petty. He never provides positive feedback. He fails to support me in accomplishing my job. He never recognizes my good performance. I serve a Director who helps my self confidence and self esteem grow. Someone who helps me advance my career. I deserve a professional treatment at work. Sean chooses favorites and makes excuses for the poor work performance of his favorites. He pals around with them outside of work but instructed me in writing not to eat lunch with the technicians or ride in the Service vehicle. Sean fails to communicate details. He changes his mind frequently which leaves me off balance. He has changed my start time three times which involves me rearranging my life. From my start date I was hired as the midnight supervisor. He never started me on midnight, he had me come in at 1 pm for almost a year. Recently he put me on 4 p.m. till 12:30. Now he wants me to re-assign my life to midnight after working for a year on second shift. He does not give clear detailed instructions. Sean uses disciplinary measures inappropriately when simple positive communication would correct the problem. He instructed me to write up the technicians for any and everything. Sean will not let go of past mistakes. Continually searches for faults in me. Sean can't deal with disagreement from me cause I have my own opinions about work related issues. ***He discussed my short comings in front of another supervisor (Anthony) laughed and slapped five with Anthony which made me feel like I was not one of the boy's.*** His constant lack of clarity around projects was the cost of me receiving a negative write up.

I was asked to write a self evaluation which I did and to this day April 15th, 2021 he has made no attempt to go over it with me. I intend to send you a copy of the self evaluation which mentioned some things I am discussing with you today. Again, Sean gives me directives that do not include details which makes it hard for me to complete the job to his satisfactory or purpose to somehow make me beg him for professionalism. From my first day on the job to this day, Sean has giving me NO formal training to prepare me for the job. He has not been very supportive, yet he flaunts his relationship at work with a female co-worker (kyaira) as if I'm next so I'd better conform to what he says in order to keep my job.

On Tuesday April 13th, 2021 Sean belittled me in front of (Anthony) the night shift supervisor. I arrived at work at 4 pm and was asked to attend a meeting with Sean, Anthony and myself. By 4:30 p.m. Sean sent me back home because I was trying to defend myself against one of his attacks and because I disagreed with him as far as what helps me to learn. ***I will not allow him to belittle me as he has my co-worker (Kyiara) which does him sexual favors.*** This caused me to miss a day of work and use my sick time because of stress and anxiety. I myself and others have witnessed Sean and Kyiara demonstrate inappropriate behavior which made me uncomfortable. I witnessed them arguing in a angry way out loud in front of witnesses. One day Sean put his hands on Kyaira to restrain her because she threw alcohol in his face. "She was not sent home". My Director's actions are beginning to make it hard for me to work. ***Sean's sexuality is at work and his mind is not.*** Supervisor's sleeping with co-workers and Sean is not the only one. Employees in the training department passing out on the floor and protocol not being carried out by either offering the employee medical help or calling for a urine test. Things are out of hand and a internal investigation needs to be carried out.

I was observing tow employees while they worked. This is something I do to help me learn how the repairs are made. We don't have written procedures in place so that is how I learn. Sean approached me and communicated to me that he did not want me babysitting the employees. I was not babysitting I was trying to learn. He also communicated in writing that we should not ride with the technicians in the Service vehicles which means I'm in the blind not knowing if they are performing their job or just slacking off. Sean expressed that we should not eat lunch with the technicians. Sean's short sightedness and controlling ways is making it hard for me to be a hands on supervisor. He is tying my hands every step of the way making it hard for me to do my job. I can't please him. I received a bad critique which interferes with my career progress. He is holding on to mistakes that were made in the beginning when I began as a supervisor and again he did not train me on the do's and don'ts. I pretty much learned on the fly.

How I know I work in a toxic environment: I began to bring the problems with Sean home and discuss it with my loved ones. I'm losing sleep, its causing me

stress and anxiety. Sean requires us to answer the phone and be at his beckoning call twenty four hours seven days a week. There is no down time from him. Requires us to answer emails possibly on our off day. Attend meetings on our off days. I'm working under the expectation that I'm always available. I have a question: Under my contract I signed am I required to work over 40 hours a week? If you could please supply me with a copy of the contract I signed.

I have been following all of his request of me and it is still not enough. In the beginning Sean discussed (Anthony's) short comings with me. Now he is discussing my short coming's with Anthony. Again I deserve professionalism. I would like to include the copy of the self evaluation and the copy of the negative critique however they are both at the job and I'm off work do to stress and anxiety. As soon as I return I will supply you with a copy of both. Your attention to this complaint is very much needed.

Thanks, Sinaloa Hobson Maintenance Supervisor"
*See* Complaint at para. 12. (italics added)

On May 3, Plaintiff Hobson, not having received any response to her initial written complaint from Ms. Bess - an agent, servant, and employee of Defendant RAPT DEV- e-mailed Ms. Bess inquiring, "I was wondering if you would update me on the progress of my case." *See* Complaint at para. 15.

On May 5, Plaintiff Hobson again contacted Ms. Bess - an agent, servant, and employee of Defendant RAPT DEV- and specifically complained "I really need you to step in regarding my complaint." *See* Complaint at para. 16. Ms. Bess, in a rather a dismissive fashion, informed Plaintiff that she was on vacation and rather than take corrective action, mandated that Plaintiff Hobson "still [needed] to communicate with Sean [Revel] directly about [her] days off or any other work concerns" despite Ms. Bess' actual knowledge that Mr. Revel was the offending subject of Plaintiff's complaints. *See Complaint* at para. 17.

On May 6, Plaintiff Hobson was advised that she was no longer allowed on the D.C. Streetcar's premises where the discriminatory conduct took place, and on May 7, 2021, she was terminated from her position.

***Prosecution of Plaintiff Hobson's claims of discrimination, harassment, and retaliation before the EEOC***

Following Plaintiff's termination, Plaintiff filed a Charge of Discrimination against D.C. Streetcar as all of the discriminatory conduct, harassment, and retaliation occurred on the premises of Defendant DC Streetcar where Plaintiff reported to work and performed her daily duties. *See* Complaint at para. 3.  Furthermore, the signature block for Sean Revel in Plaintiff's written directive regarding expectations for her position refers to him as "DC Streetcar Maintenance Director" with an office address at the location where the violations of Title VII concerning the Plaintiff took place, and Plaintiff's paperwork related to her termination displayed the insignia of D.C. Streetcar, and in the footer of said paperwork referenced the address of D.C. Streetcar in Washington, D.C. as the governing contact information regarding Plaintiff's employment as a Maintenance Supervisor. *See* Exhibits 1 and 3 to Defendant's Motion to Dismiss.

Defendant's Motion purports to infer that Plaintiff Hobson sat idly by until the amendment of her Charge in March 2022, however, this was not the case. Indeed, while the claim was pending, the parties were notified on October 19, 2021 that the Charge was assigned to the mediation unit with an opportunity to mediate the matter through the EEOC's mediation program and provided dates of availability in November and December 2021. *See Exhibit 1* [EEOC Mediation e-mail dated October 19, 2021].  On December 21, 2021, not having yet received a response from D.C. Streetcar, the assigned mediator again contacted the parties with dates of availability in January 2022. *See Exhibit 2* [EEOC Mediation e-mail correspondence from January 2022]. Counsel for D.C. Streetcar responded on January 25, 2022 regarding his unsuccessful attempts to schedule the mediation via the EEOC's online portal, and ultimately

agreed to participate in mediation on March 23, 2022 which was confirmed by the EEOC

mediator. *See Exhibit 3* [E-mail correspondence confirming mediation].

On March 10, 2022, counsel for D.C. Streetcar communicated to counsel for Plaintiff

Hobson that D.C. Streetcar was electing not to move forward with the mediation on the premise

that D.C. Streetcar was not Plaintiff Hobson's employer. This information was communicated to

the mediator who then responded to all parties as follows:

> "Hello all,
>
> The best course of action is to amend the charge to include Rapt Dev USA in the charge and serve them as well. Please include the Human Resource individual so that it can be served to the correct person. This current charge will be moved to investigations in which D.C. Street car will answer if Charging Party was an employee or not. I will cancel the date of mediation. Please move quickly on that amendment. Thank you for your cooperation." *See Exhibit 4* [E-mail correspondence dated March 10, 2022].

On that same date, March 10, 2022, an amended Charge of Discrimination was filed adding

RATP as a respondent. *See* Exhibit 6 to Defendant's Motion to Dismiss. Then, on April 19, 2022,

counsel for Plaintiff Hobson received a call from the assigned EEOC investigator requesting that

a separate Charge of Discrimination be filed naming only RAPT DEV USA as the respondent.

Immediately following this conversation, counsel for Plaintiff Hobson received e-mail

correspondence from the EEOC investigator which stated as follows:

> "As per our conversation, please send a new form 5-Charge of Discrimination document with only RAPT DEV USA information along with the attorney drafted charge wording to me. Once I process it, you and Ms. Hobson will receive notification of the charge filed.
>
> Please note that this new charge may be dismissed based on the last date of incident of May 2021. Notice of Rights to Sue will be issued for you to pursue the matter privately.
>
> Let me know if you have any questions.

Thank you." *See Exhibit 5* [E-mail correspondence from EEOC investigator dated April 19, 2022]

Per the investigator's instruction, a separate Charge of Discrimination (Charge No. 570-2022-01797) naming only RATP as the Respondent was promptly filed on that same date, April 19, 2022. The EEOC subsequently dismissed both the amended charge and newly filed charge, issuing Notice of Rights to Sue letters for each one prompting the filing of the instant lawsuit.

### *Facts Material to Plaintiff Hobson's claims of discrimination, harassment, and retaliation*

Plaintiff Hobson adopts the facts as alleged in the Complaint and incorporates them by reference as though fully stated herein.

### *Legal Standard*

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations and facts in the complaint are to be construed in the plaintiff's favor, and the Court must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Federal Rules only require that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," because the complaint must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Conley, 355 U.S. at 47, 78 S.Ct. 99. In deciding whether to dismiss a complaint under Rule 12(b)(6), the Court will consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters about which the Court may take judicial notice. EEOC v. St. Francis

Xavier Parochial School, 117 F.3d 621, 624-25 (D.C. Cir. 1997); Phillips v. Bureau of Prisons, 591 F.2d 966, 969 (D.C. Cir. 1979).

### *Legal Argument*

### A.    *Defendant RAT-P DEV Shall Be Estopped From Alleging That They Did Not Receive Timely Notice of Plaintiff's Claims.*

The touchstone of Defendant's argument that Plaintiff failed to exhaust her administrative remedies is that RATP was "not on notice of her claims within the appropriate amount of time." *See* Def. Motion at p. 5. However, the District of Columbia Circuit has stated that exhaustion is not an end in itself; it is a practical and pragmatic doctrine that must be tailored to fit the peculiarities of the administrative system Congress has created. Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191 (D.C. Cir. 2002)(citing Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1978)). An employer must have notice of an employee's grievance, and a fair opportunity to provide full redress or to attempt an informal accommodation; Title VII requires no more. Loe v. Heckler, 768 F. 2d 409 (D.C. Cir. 1985).

Here, Plaintiff Hobson met her legal requirement. Her outpouring of written and e-mail correspondence on three separate occasions within a sixty-day period to RATP's human resources department protesting discriminatory and harassing behavior is evident in the record as referenced in the aforementioned Statement of Facts. Given the notice provided by Plaintiff Hobson to Defendant RATP's human resources department, this Defendant knew or should have known of the alleged unlawful conduct and failed to take corrective measures within its control. Nytes v. Trustify, Inc. 297 F.Supp. 3d 191, 207 (D.C. Cir. 2018).

This case is analogous to the facts set forth in Carter v. Washington Metro Area Transit Authority, 503 F. 3d 143 (2007) in which the District of Columbia Circuit's Court of Appeals found that the claimant's employer had adequate notice where the Claimant immediately

reported the offending Title VII violations to her supervisor and the employer was deemed to have "immediate and adequate notice" prior to the Claimant filing an EEOC questionnaire. Here, Plaintiff Hobson immediately reported the offending Title VII violations to RATP prior to promptly filing a charge regarding the same allegations with the EEOC within the proscribed time period (i.e. 300 days). Indeed, per the admission of counsel for co-Defendant D.C. Streetcar, RATP, at all times relevant, was contractually responsible for the operation of D.C. Streetcar. *See* Def. Motion at Exhibit 5, para. 3.

Accordingly, Plaintiff respectfully requests that this honorable Court find that Defendant RATP had sufficient and timely notice of Plaintiff's claims and that Defendant's Motion be denied in this regard.

**B.** **Plaintiff's Complaint Pleads Facts Sufficient to Support a Claim of Gender Discrimination.**

With respect to Plaintiff Hobson's gender discrimination claim, she has indeed pled facts that support a reasonable inference that she suffered gender discrimination. According to paragraph nine of Plaintiff's Complaint, she states that her direct supervisor (Sean Revel) who engaged in the discriminatory conduct was a male, that the other Maintenance Supervisor (Anthony Peregrina) and Plaintiff's comparator was a male, and that the General Manager to whom Mr. Revel reported during Plaintiff's tenure was also a male. *See* Complaint at para. 9. Furthermore, as pled in the Complaint, the unsolicited document received by the Plaintiff heaps praise upon Mr. Peregrina (i.e. "Anthony, Knorr is your baby to organize with Leslie and the car parts. You've done an amazing job thus far, thank you very much."), while inferring that Plaintiff Hobson falsified work documents despite her never being disciplined, counseled, or reprimanded for doing so (i.e. "Sin this tasks [sic] fall[s] on your shoulders, considering the shift that does

most inspections. Inspections should be complete, not falsified and QA'd by a tech, sup, or myself before being deemed complete."). *See* Complaint at para. 10.

Additionally, as specifically alleged in the Complaint at paragraph 12, on April 15, 2021, Plaintiff Hobson wrote to Karen Bess in RATP's HR department to express the degree to which she was subject to discrimination based on her gender, specifically stating that Mr. Revel "discussed [her] short comings in front of another [male] supervisor (Anthony) laughed and slapped five with Anthony which made [her] feel like [she] was not one of the boy's [sic]." *See* Complaint at para. 12.

Plaintiff Hobson also pleads facts giving rise to an inference of gender discrimination given her reference to Mr. Revel belittling her in front of another male employee (Mr. Peregrina), and showing favoritism and the promise of continued employment only for female co-workers who provide him "sexual favors", as her Complaint states:

> "On Tuesday April 13th, 2021 Sean belittled me in front of (Anthony) the night supervisor. I arrived at work at 4 p.m. and was asked to attend a meeting with Sean, Anthony and myself. By 4:30 p.m. Sean sent me back home because I was trying to defend myself against one of his attacks and because I disagreed with him as far as what helps me to learn. I will not allow him to belittle me as he has my co-worker (Kyiara) which does him sexual favors… He has not been very supportive, yet he flaunts his relationship at work with a female co-worker (kyaira) as if I'm next so I'd better conform to what he says in order to keep my job." *See* Complaint at para. 12.

Plaintiff Hobson's Complaint also gives rise to an inference of gender discrimination based on her cited disparate treatment based on gender in the assignment of job duties and responsibilities, as she specifically pled:

> "On April 30, Plaintiff received an e-mail from Mr. Revel which included a bulletin point list of night supervisors duties and expectations" many of which varied in their nature and scope in comparison to the job description which Plaintiff was provided upon her hiring. Upon information and belief, Plaintiff's

comparator Mr. Anthony Peregrina did not receive any such list of "supervisor expectations." *See* Complaint at para. 14.

Furthermore, Plaintiff's Complaint infers gender discrimination by explicitly stating that her "position was filled by a male, and Plaintiff's comparator, Anthony Peregrina, continues to be employed with D.C. Streetcar."

According to Black's Legal Dictionary, an "inference" is a process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted. *See* Black's Legal Dictionary, Second Edition. Here, based on the facts as pled in the Complaint, gender discrimination against Plaintiff Hobson by Sean Revel is a logical consequence from the facts she explained to RATPDev's HR representative that refutes Defendant's posture in their Motion. Accordingly, Defendant's Motion shall be denied in this regard.

### C.    *Plaintiff's Complaint Pleads Facts Sufficient to Support a Claim of Harassment.*

Similar to Plaintiff's claim of gender discrimination, Plaintiff Hobson has pled facts that support a reasonable inference that the alleged conduct she complained of was severe and pervasive enough to rise to the level of a hostile work environment. Plaintiff Hobson indeed pleads facts to support that Mr. Revel's conduct exhibited toward her is based on her gender, as her Complaint states Mr. Revel "discussed [her] short comings in front of another [male] supervisor (Anthony) laughed and slapped five with Anthony which made [her] feel like [she] was not one of the boy's [sic]." *See* Complaint at para. 12.

Likewise, Plaintiff pleads facts that support a reasonable inference that the complained of conduct occurred because of her gender given her reference to Mr. Revel belittling her in front of another male employee (Mr. Peregrina), and showing favoritism and the promise of continued

employment only for female co-workers who provide him "sexual favors", as her Complaint states:

> "On Tuesday April 13th, 2021 Sean belittled me in front of (Anthony) the night supervisor. I arrived at work at 4 p.m. and was asked to attend a meeting with Sean, Anthony and myself. By 4:30 p.m. Sean sent me back home because I was trying to defend myself against one of his attacks and because I disagreed with him as far as what helps me to learn. I will not allow him to belittle me as he has my co-worker (Kyiara) which does him sexual favors… He has not been very supportive, yet he flaunts his relationship at work with a female co-worker (kyaira) as if I'm next so I'd better conform to what he says in order to keep my job." *See* Complaint at para. 12.

Plaintiff Hobson also pleads facts that support an inference that Mr. Revel's behavior altered the conditions of the victim's employment based on her specific reference in her cited letter to the Defendant's Human Resources representative as follows:

> "Again, Sean gives me directives that do not include details which makes it hard for me to complete the job to his satisfactory or purposes to somehow make me beg him for professionalism. From my first day on the job to this day. Sean has giving [sic] me NO formal training to prepare for the job. He has not been very supportive, yet he flaunts his relationship at work with a female co-worker (kyaira) as if I'm next so I'd better conform to what he says in order to keep my job."
>
> ************************************************
>
> "I will not allow him to belittle me as he has my co-worker (Kyaiar) which does him sexaul favors. This caused me to miss a day of work and use my sick time because of stress and anxiety."
>
> ************************************************
>
> "He is tying my hands every step of the way making it hard for me to do my job. I can't please him. I received a bad critique which interferes with my career progress." *See* Complaint at para. 12.

Additionally, Plaintiff Hobson pleads facts that support the inference that Mr. Revel's conduct was severe and pervasive as her Complaint states:

> "How I know I work in a toxic environment: I began to bring the problems with Sean home and discuss it with my loved ones. I'm losing sleep, its causing me

stress and anxiety."

Heretofore, Plaintiff Hobson has indeed pled facts that give rise to an inference that the conduct alleged was related to her gender and that it was severe and pervasive enough to be actionable. To that end, Defendant's Motion on the basis that Plaintiff fails to state a hostile work environment shall be denied in this regard.

### D.     Plaintiff's Complaint Pleads Facts Sufficient to Support a Claim of Retaliation.

For the reasons explained above in Sections B and C, Plaintiff Hobson's complaint to HR constituted a protected activity given that she in fact complained about discrimination based on her gender, as well as severe and pervasive harassment based on her gender. See Complaint at para. 12. Plaintiff Hobson's complaint to HR went further than broad-based allegations of frustrated ambition or being "picked on"; rather she specifically referenced that the behavior exhibited towards her was different than that exhibited towards similarly situated men (i.e. Mr. Revel "discussed [her] short comings in front of another [male]  supervisor (Anthony) laughed and slapped five with Anthony which made [her] feel like [she] was not one of the boy's [sic]." ) and different than that of female co-workers who subjected themselves to the sexual overtures of Mr. Revel (i.e. "I will not allow him to belittle me as he has my co-worker (Kyiara) which does him sexual favors… He has not been very supportive, yet he flaunts his relationship at work with a female co-worker (kyaira) as if I'm next so I'd better conform to what he says in order to keep my job."). Such complaints as pled allege unlawful discrimination, and therefore fall within the ambit of protected activity. Under Fed.R.Civ.P. 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face to nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "

As the Supreme Court made clear in <u>Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee</u>, the opposition clause of Title VII makes it "unlawful... for an employer to discriminate against any ... employe[e] ... because he has opposed any practice made ... unlawful... by this subchapter." § 2000e-3(a). The term "oppose," being left undefined by the statute, carries its ordinary meaning: "[t]o resist or antagonize ...; to contend against; to confront; resist; withstand," Webster's New International Dictionary 1710 (2d ed.1957). <u>Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee</u>,555 U.S. 271, 129 S.Ct. 846 (2009). Plaintiff Hobson's complaint to HR was not a generalized complaint regarding the assignment of tasks or a general critique of unfavorable working conditions such as poor lighting or long hours, but rather a specific indictment against the intolerable actions of Mr. Revel which violated the spirit and letter of Title VII based on her gender. Therefore, her complaint shall constitute a protected activity, and in turn, her claim of retaliation as pled shall not be dismissed under Fed.R.Civ.P. 12(b)(6).

### *Conclusion*

For the reasons set forth in this Opposition, and based upon the points and authorities cited heretofore, Plaintiff Hobson respectfully requests that Defendant's Motion be denied.

<u>Governor E. Jackson, III /s/</u>
Governor E. Jackson, III (Bar No. 1002797)
Law Office of Governor Jackson, III LLC
10 G Street NE, Suite 600
Washington, D.C. 20002
(410) 528-5150 (o)
(410) 528-1055 (f)
gjackson@governorjacksonlaw.com
*Attorney for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of August, 2022, a copy of this Opposition to Defendant's Motion to Dismiss was filed electronically and served upon all counsel of record.

<u>Governor E. Jackson, III /s/</u>